# IN THE COURT OF APPEALS OF IOWA

No. 18-0812
Filed July 24, 2019

IN RE THE MARRIAGE OF THADDEUS JEREMIAH ZIMMERMAN
AND JAMIE KAY ZIMMERMAN

Upon the Petition of
**THADDEUS JEREMIAH ZIMMERMAN,**
      Petitioner-Appellant,

And Concerning
**JAMIE KAY ZIMMERMAN,**
      Respondent-Appellee.

_____

Appeal from the Iowa District Court for Johnson County, Kevin McKeever,

Judge.

Thaddeus Zimmerman appeals the physical care provisions of the decree

dissolving his marriage to Jamie Zimmerman. **AFFIRMED.**

David Burbidge of Johnston, Stannard, Klesner, Burbidge & Fitzgerald,

P.L.C., Iowa City, for appellant.

Jamie Zimmerman, Iowa City, pro se appellee.

Considered by Vaitheswaran, P.J., Vogel, S.J., and Gamble, S.J.*

*Senior judges assigned by order pursuant to Iowa Code section 602.9206 (2019).

**VAITHESWARAN, Presiding Judge.**

Thaddeus Jeremiah ("T.J.") and Jamie Kay Zimmerman married in 2010 and divorced in 2018. The district court granted Jamie physical care of their child, born in 2010, subject to visitation with T.J. "from 7:30 p.m. on days before he does not work until 7:30 p.m. on the day before his work shift begins." In a posttrial ruling, the district court struck the visitation provision and replaced it with the following: "[T.J.] shall have care of the child on Wednesday beginning at 6:00 P.M. through Sunday at 9:00 A.M. [Jamie] shall have care of the child from Sunday at 9:00 A.M. through Wednesday at 6:00 P.M." The court ordered T.J. to pay Jamie $342.00 per month in child support.

On appeal, T.J. argues the district court should have granted him physical care of the child or, in the alternative, should have ordered joint physical care. He requests modification of the child support order if we choose either option and modification of the visitation provision if we leave physical care with Jamie. Jamie did not file a responsive brief.

The district court made the following findings and conclusions:

> In listening to the witnesses in this case, the Court finds that this was certainly the tale of two stories which bore little resemblance to each other. [T.J.] and [Jamie] describe one another as being abusive and controlling. They both seem to be working on their issues since they both attend counseling regularly. The Court believes that they have had a volatile and unhealthy relationship. However, the Court also notes that they both appear to love and care for their child. It is noteworthy that the Court recognizes that there are signs that [Jamie] has been subjected to abuse and [T.J.] has displayed an unfortunate tendency to show anger and aggression. However, it is also noteworthy that by all recent accounts, [T.J.] seems to be managing his temperament in an appropriate way. The Court notes that both parties have accused one another of abuse. This is extremely concerning and is an indication to the Court that both parties have done the correct thing by enrolling in therapy.

The Court finds that a shared care arrangement is an arrangement that the Court would most like to impose. Unfortunately, the Court does not feel that the parties communicate well enough to support a shared care arrangement. This is extremely unfortunate because the child is strongly bonded to both parties. The parties have testified that there have been some difficulties communicating regarding the child. However, the child has been well cared for in both of their homes. Parents will often disagree regarding important issues in their child's life. The key is whether or not the parents can put their differences aside and make the best decision that they can. They do not have to always agree but they do need to focus on the well-being of their child. The Court would like to believe that these parties can do this. However, the Court would be remiss in ignoring the signs that shared care is unlikely to work.

In the absence of the ability to award shared care, the Court must select a primary caregiver for the child. Both parents have spent significant time with the child since the entry of the temporary order in November of 2016. By all objective accounts, the child is well adjusted, happy, intelligent, and strongly bonded to both parents. Although both parents have raised concerns about each other, the Court finds that those concerns have been largely exaggerated by both parties. Although there have been some concerning events since the current care arrangement was established, the child has thrived under the current care arrangement. The one concern that the Court believes should be addressed is the sheer number of exchanges that take place during the week. The Court believes that a very similar care arrangement with fewer exchanges would be in the best interest of the child. However, this is made extremely difficult by the Petitioner's current work schedule. Therefore, the Court concludes that the child's best interests would be served by continuing the current care schedule between the parties.

We begin with the district court's rejection of joint physical care. "[A] stormy marriage and divorce presents a significant risk factor that must be considered in determining whether joint physical care is in the best interest of the children." *In re Marriage of Hansen*, 733 N.W.2d 683, 698 (Iowa 2007). The parents had a volatile relationship marked by domestic abuse dating back to 2014. T.J. testified both parties were "guilty of abusing each other." He claimed Jamie pulled and dragged him by his hair and punched him in the face. He admitted he assaulted

Jamie shortly before the dissolution petition was filed by holding her in "a modified choke hold."

T.J.'s conduct led Jamie to seek a domestic abuse protective order. T.J. followed up with his own petition for a protective order. Those petitions were considered in separate proceedings. In the dissolution proceeding, the district court enjoined the parents from having contact with each other except by text message and during visitation exchanges.

T.J. testified the couple's history of abusive conduct was not relevant to the physical care decision because "these were . . . issues of a tumultuous dysfunctional relationship" and the parents were no longer together. To the contrary, evidence of domestic violence is a consideration in determining the viability of a joint physical care arrangement. *See id.* (stating "[e]vidence of untreated domestic battering should be given considerable weight in determining custody and gives rise to a presumption against joint physical care"). Although both parents underwent therapy, their post-separation relationship was marked by ongoing hostility and mistrust. The parents' unwillingness to set aside their differences was inimical to a joint physical care relationship. *See id.* We conclude the district court acted equitably in denying T.J.'s request for joint physical care.

We turn to T.J.'s contention that the court should have granted him physical care of the child. T.J. testified he had "more of a track record of offering financial stability, consistency, responsibility." It is true that he was employed and Jamie received public assistance. But poverty is not an independent ground for denying a parent physical care. *See In re Marriage of Gravatt*, 371 N.W.2d 836, 840 (Iowa Ct. App. 1985) ("Poverty alone has never been accepted as a sound basis for

declining to give either parent the custody and control of the issue of the marriage, providing they are otherwise equipped and the child's welfare would not be jeopardized."). As for T.J.'s assertion that he was a responsible and consistent caretaker, we agree he showed himself to be an active, engaged, and loving parent. But, as the district court found, the same could be said of Jamie.

At the end of the day, the district court's ability to assess the parents' demeanor carries greater weight in this type of close case because the court's unique vantage point is not available to us. *See In re Marriage of Vrban*, 359 N.W.2d 420, 423 (Iowa 1984) ("We are denied the impression created by the demeanor of each and every witness as the testimony is presented."); *McKee v. Dicus*, 785 N.W.2d 733, 736 (Iowa Ct. App. 2010) ("[T]he district court was able to listen to and observe the parties and witnesses."). On our de novo review, we conclude the district court acted equitably in granting Jamie rather than T.J. physical care of the child.

Having declined to modify the physical care arrangement, we turn to T.J.'s request for additional visitation. The court afforded T.J. three overnights with the child each week. This extraordinarily liberal visitation arrangement closely tracked the amount of time T.J. spent with the child under a temporary physical care order. Specifically, Jamie testified that, for close to a year before the dissolution trial, she and T.J. cared for the child "alternate Thursdays from 6:00 p.m. until Sunday at 6:00 p.m." She agreed the number of overnights she had with the child was not significantly greater than the overnights T.J. had with the child. We decline T.J.'s request for increased visitation.

Finally, T.J. seeks a modification of the child support award only if we modify the physical care arrangement. Because we have affirmed the physical care arrangement ordered by the district court, we need not address this issue.

We affirm the dissolution decree in its entirety.

**AFFIRMED.**